KEY BANK OF NEW YORK, Plaintiff,

v.

PALMER JOHNSON, INC.,
Intervening Plaintiff,

v.

CHRISTINA a/k/a Dinda her engines, masts, anchors, cables, Chains, rigging, tackle, apparel, furniture, and all the necessaries therewith appertaining,

In Rem,

and

Jon J. King

In Personam, Defendants.

No. 93–C–332.

United States District Court,
E.D. Wisconsin.

Nov. 26, 1993.

Thomas J. Lonzo, William A. Jennaro, Cook & Franke, Milwaukee, WI, for intervenor plaintiff.

Randall J. Nesbitt, Pinkert, Smith, Weir, Jinkins & Nesbitt, Sturgeon Bay, WI, Holland Capper, Chicago, IL, for Nieman & Considine, Inc. proposed intervenor.

## ORDER

CURRAN, District Judge.

The only issue remaining in this action commenced to foreclose a Preferred Ship Mortgage on the sailing vessel Christina is the motion of Nieman & Considine, Inc. for leave to intervene. In its proposed complaint, Nieman & Considine claim that in August, 1992, an individual named Ray Riddle, representing himself as the owner of the yacht Dinda, ordered from Nieman & Considine a Spectra Genoa sail with special luff material and an HC 52 Spectra Mainsail with two reefs together with custom designed hardware and track for a total agreed upon purchase price of $18,142.24. The custom sails were delivered to Riddle who placed them on board the sailboat. Riddle had paid $3,000.00 on account for the sails and equipment leaving an unpaid balance including interest of $16,893.70. The proposed complaint sought return of the sails.[1]

On November 6, 1987 Jon King executed a Promissory Note, along with a Loan and Security Agreement pursuant to which Key Bank or its subsidiary extended credit to King in the principal amount of $252,357.60. In both the Promissory Note and the Loan and Security Agreement, King granted to Key Bank a security interest in the vessel Christina. Christina is a 1987 52–foot Hans Christian yacht.[2] On December 18, 1987, a First Preferred Ship Mortgage on the

---

1. Pursuant to an agreement of the parties, the plaintiff has escrowed the agreed upon amount of $16,893 in an interest bearing account pending resolution of the motion to intervene. The sale of the vessel, including its sails, was confirmed by order of this court, dated November 12, 1993.

2. There does appear to be a minor dispute as to whether the Christina is a 1987 or a 1986 vessel. It apparently was completed in 1986 but was transferred from the ship builder to the ship's seller after the month of June and is thus identified for commercial purposes as a 1987 vessel.

Christina was executed and was duly recorded at the United States Coast Guard, Houston, Texas on February 2, 1988. The final payment on the promissory note was made in September, 1992 and the loan was declared in default as of December 1, 1992.

It appears that on December 28, 1990, Jon King attempted to transfer title to the vessel to Ray H. Riddle. The file contains a document entitled "Bill of Sale" on Coast Guard form CG–1340. Riddle filed the bill of sale, but the Coast Guard does not accept a bill of sale until a satisfaction of mortgage from the mortgagee has been filed. Key Bank did not approve the transfer of ownership from King to Riddle and, thus, did not file the satisfaction of mortgage and the Coast Guard continued to denominate King as the owner of the vessel.[3] In a letter dated March 1, 1993, Riddle detailed to King the problems he was having in establishing his ownership of the vessel. Riddle claims that he had had at least ten discussions with representatives of the bank explaining that he held title to the boat and wished to assume the Note on like terms and conditions. He indicated that he had been making all payments on the Note for the preceding two years and did not understand Key's unwillingness to allow assumption of the Note, especially having learned of King's bankruptcy. On April 6, 1993 Key Bank commenced the instant action to foreclose the Preferred Ship Mortgage.

■ Key Bank first argues that Nieman & Considine should not be permitted to intervene because the action is untimely. The vessel was arrested by the United States Marshal on April 8, 1993 with the public notice of the action on arrest published in the Milwaukee Journal on April 18, 1993. Supplemental Rule for Certain Admiralty and Maritime Claims C(6) provides that claimants shall file claims within ten days after process has been executed and shall serve answers within 20 days after the filing of the claims. Nieman & Considine's motion to intervene was not filed until August 12, 1993 over 100 days past the deadline for the filing of a claim. Nieman & Considine does not

dispute that it had knowledge of the action by Key Bank, but asserts that it is not subject to Rule C(6) because it is not asserting a maritime lien. Nieman & Considine characterized Ray Riddle as one tortiously or unlawfully in possession or charge of the vessel and who thus had no authority to procure necessaries for the vessel. This, however, is not borne out by the fact that Riddle had a bill a sale from the owner of record. He thus had at least apparent authority to purchase necessaries for the vessel. Riddle made a $3,000 deposit and apparently made a significant number of payments on the Promissory Note.

The Maritime Commercial Instruments and Liens Act provides that the following persons are presumed to have the authority to procure necessaries for a vessel: the owner, the master, a person entrusted with the management of the vessel at the port of supply or an officer or agent appointed by the owner, a charterer, an owner pro hoc vice or an agreed buyer in possession of the vessel. 46 U.S.C. § 31341(a). In providing Riddle with a bill of sale, King endowed him with this authority either as a person entrusted with the management of the vessel or as an agreed buyer in possession of the vessel.

■ Nieman & Considine does not seriously contest the status of the sails and hardware as necessaries. The term necessaries has been defined as "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. Necessaries are things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged ..." *Itel Containers Intern. Corp. v. Atlanttrafik Exp. Service Limited,* 781 F.Supp. 975 (S.D.N.Y. 1991) reversed on other grounds, 982 F.2d 765 (2d Cir.1992) quoting *Equilease Corp. v. M/V Sampson,* 793 F.2d 598 (5th Cir.) (en banc) *cert. denied,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986). Applying this test, sails are clearly necessaries of a sailing yacht.

---

**3.** 46 CFR § 67.23–5(a) provides as follows: "A certificate of documentation issued to a vessel which is the subject of an outstanding mortgage of record may not be surrendered for a cause arising under § 67.23–3(a)(1) through (9) of this subpart without consent of the mortgagee."

Nieman & Considine was thus a person providing necessaries to a vessel on the order of a person authorized by the owner and a maritime lien was created. The person providing the necessary is entitled to bring a civil action in rem to enforce the lien. 46 U.S.C. § 31342(a). Nieman & Considine's claim was filed in an untimely fashion and nevertheless would have been subject to the priority possessed by the plaintiff by virtue of Key Bank's first Preferred Ship Mortgage. Nieman & Considine's sole remedy at this point is against Riddle, personally, for breach of the purchase contract. Accordingly,

IT IS ORDERED that the motion of Nieman & Considine for leave to intervene be and hereby is DENIED.

IT IS FURTHER ORDERED that this constitutes the final order of the court.

Done and Ordered.